Law Office of Danielle Iredale, APC
Danielle Iredale
California State Bar No. 304693
185 West F St.  Suite 100
San Diego, CA 92101
(619)230-5606
iredalelaw@gmail.com

Attorney for COMPANY A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CASE NO.:  23CR0022-TWR |
|---|---|---|
| Plaintiff, | ) | Hon. Todd W. Robinson |
| v. | ) | **Memorandum of Points and Authorities in Support of Motion for Return of Property pursuant to FRCP 41(g) and 18 U.S.C. §983(f)** |
| SEAN TYLER MANCUSO, | ) | |
| Defendant. | ) | |
| | ) | Date:  February 23, 2023 |
| | ) | Time:  1:30 p.m. |

This Court should grant Company A's motion for return of $8,576,800.00 in funds seized from Torrey Pines/Western Alliance Bank acct x1396 and $1,406.00 U.S. Currency seized from Defendant pursuant to Federal Rule of Criminal Procedure 41(g)/18 U.S.C. §983(f).  Company A is the rightful owner of the funds, the government's need for the property as evidence has ended, and delaying return by waiting for the normal course of ancillary proceedings will cause irreparable harm to Company A.  Return of the property forthwith is the reasonable and equitable course of action given the facts here.

1

## I. INTRODUCTION

On February 14, 2023, Defendant Mancuso pled guilty to a violation of 18 U.S.C §1343, wire fraud. *See ECF Doc. Nos. 21-24.*

Defendant Sean Tyler Mancuso has admitted that he, then an employee of Company A, had changed the payee bank account in Company A's Google account payable system to his own bank account (Chase account ending in x7667). As a result, on November 22, 2022, Google's payment of $9,149,001.65 went to Defendant's account instead of Company A's account.

To recover the stolen funds, the United States sought and obtained seizure warrants and seized $9,013,014.27 of the total $9,149,001.65 in funds stolen from Company A from the following accounts:[1]

| CATS ID | Asset Description | Asset Type |
|---|---|---|
| 23-FBI-000945 | $8,576,800.00 in funds seized from Torrey Pines/Western Alliance Bank acct x1396 held in the name of WC3 Wholesale, Inc. | Funds |
| 23-FBI-001058 | $4,029.43 in funds seized from Chase Bank acct x6251 held in the name of DOWN4EARTH | Funds |
| 23-FBI-001541 | $133,308.18 in funds from Bank of America acct x3885 Oxford Gold Group, Inc. | Funds |
| 23-FBI-000952 | $1,406.00 U.S. Currency seized pursuant to the arrest of Tyler Mancuso | Funds |
| Pending | $297,470.66 in funds from Chase Bank acct x7667 held in the name of Tyler Mancuso | Funds |

Defendant sought to convert Company A's stolen funds into gold bars, and he contacted Oxford Gold in Beverly Hills, California to accomplish his goal. *See ECF Doc. No. 24.* On November 23, 2022, Defendant initiated a wire transfer of $9,007,578.84 from

---

[1] The amount seized is $135,987.38 less than the total stolen. According to the plea agreement, on November 25, 2022, Defendant withdrew $80,000 from the Chase Account x7667. On November 22, 2022, Defendant transferred $45,000 of the stolen funds into Chase Account X6251 in the name of DOWN4EARTH. ECF Doc. No. 24. DOWN4EARTH is a charity in which Mancuso serves as a director and officer. Only $4,029.43 was left in the DOWN4EARTH account at the time the seizure was effectuated. Through his attorney, Defendant returned $108,900 directly to Company A. It is unclear where the remaining $27,087.38 is located.

the x7667 Chase bank account to the account for Oxford Gold Group, a Bank of America Account ending x3885. *Id.* After receiving the $9,007,578.84 transfer, Oxford Gold transferred $8,576,800 to Wilshire Coin, to their Torrey Pines/Western Alliance Bank acct x1396 held in the name of WC3 Wholesale, Inc. *See ECF Doc. No. 1, Unsealed Affidavit in Support of Seizure Warrant in Case No. 23MJ87-WVG.* "Oxford Gold retained $430,778.84 in the Bank of America x3885 Account of the fraudulent proceeds that [defendant] originally diverted from Company A." *Id.* Currently, $133,308.18 in funds from Oxford Gold's Bank of America Account x3885 is seized pursuant to a warrant. Another $297,470.66 is seized from Chase Account ending x7667, which was associated with Defendant. These amounts equal $430,778.84. Oxford Gold intends to make a claim to $430,778.04 in seized funds, compromised of $133,308.18 seized from Oxford Gold's Bank of America account and $297,470.66 held in a Chase Bank account. Oxford Gold does not intend to pursue a claim against any other funds seized in connection with Tyler Mancuso's criminal case.

The bulk of the stolen funds, $8,576,800.00, was seized from Torrey Pines/Western Alliance Bank acct x1396 held in the name of WC3 Wholesale, Inc. This is the bank account for Wilshire Coin. Wilshire Coin owner Glenn Sorgenstein was informed by FBI Special Agent Nick Hall that these funds were the proceeds of wire fraud. *See Attached Declaration of Mr. Sorgenstein.* Mr. Sorgenstein understands his right to contest the seizure of the entire $8,576,800.00 from Wilshire Coin's bank account, and also understands that he may claim an interest in an amount less than the full amount seized. *Id.* He understands that his claim may be based on his expenses or lost profit from the canceled transaction. *Id.* He also understands that he may consult with an attorney about this decision. *Id.* Understanding all of his rights, Mr. Sorgenstein does not wish to contest the seizure of the $8,576,800.00 or claim any portion of that amount. *Id.*

As agreed in the Forfeiture Addendum to the Plea Agreement, *See ECF Doc. No. 24*, based upon Defendant's guilty plea to Count 1 of the Information, all right, title,

interest, and any claim of Defendant is forfeited as to all of the seized amounts, including the $8,576,800.00 in funds sought here. It is anticipated that, pursuant to a preliminary order of forfeiture that has been submitted for the Court's signature, the United States will be authorized to continue to maintain possession of the funds and to hold in abeyance all notice of third-party proceedings pending this anticipated Rule 41(g) motion by the victim Company A from whom the funds were stolen.

As set forth in the declaration of Attorney A for Company A, filed under seal, Defendant's diversion of $9,149,001.65 from the Company has caused significant financial harm. In fact, the Company will suffer irreparable harm if the money is not returned forthwith.

This Court should grant Company A's Motion for Return of Property pursuant to Rule 41(g) and order the immediate release of $8,578,206, consisting of $8,576,800.00 in funds seized from Torrey Pines/Western Alliance Bank acct x1396 held in the name of WC3 Wholesale, Inc. and $1,406.00 U.S. Currency seized pursuant to the arrest of Sean Tyler Mancuso, forthwith to Company A.

## II. THE LAW

Federal Rule of Criminal Procedure Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Motions under Rule 41(g) are equitable in nature, so a court must account for all equitable considerations. *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir. 1987). The instant case presents a simple set of facts, but a unique application of Rule 41(g). Ordinarily, a Rule 41(g) motion is used by the defendant to seek the return of property after an indictment has been issued. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th

Cir. 1993 (citing *Black Hills Institute v. Dept. of Justice*, 967 F.2d 1237, 1239 (8th Cir. 1992). Normally, the defendant/movant has the burden of demonstrating that "(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987); see also *United States v. Mills* ("Generally, a Rule 41(e)$^2$ motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." (*citing United States v. Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991)). In most cases, the Government opposes the property's return.

After there is no longer an evidentiary need for the item seized, "the person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating it has a legitimate reason to retain the property. *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir. 1987).

The Ninth Circuit has also held that a district court has jurisdiction to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant. *United States v. Martinson, 809 F.2d 1364, 1366-67 (9th Cir. 1987); See, e.g., Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975). Such motions are treated as civil equitable proceedings even if styled as being pursuant to Fed. R. Crim. P. 41(e).$^3$ *Id.* In ruling on the motion, the court must take into account all equitable considerations. *809 F.2d at 1367.* The Ninth Circuit has adopted the *Richey*$^4$ factors when considering whether the merits of a pre-indictment 41(g) motion. *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993). The four factors a district court should consider in deciding whether to entertain a Rule 41(g)$^5$ motion made prior to the initiation

---

$^2$ The cases refer to FRCP 41(e) which is the current FRCP Rule 41(g).
$^3$ See FN 2.
$^4$ *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975).
$^5$ The cases refer to FRCP 41(e) which is largely identical to the current FRCP Rule 41(g).

5

of criminal proceedings are (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in the property and wants the property returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for redress of his grievance. *Id.*

### III. THE FUNDS SHOULD BE RETURNED FORTHWITH TO COMPANY

While no case is on all fours with the situation here, the case law provides guidance which compels the return of funds to Company A. Here, Company A is a "person aggrieved by the deprivation of property" and thus is entitled to move for its return. The property was originally stolen by Defendant, and now remains seized by the Government in primarily one account, as well as four other accounts/locations. This Court should "grant the motion and return the property to Company A," and "may impose reasonable conditions to protect access to the property and its use in later proceedings." *See* FRCP Rule 41(g).

This case is post-indictment, and Company A satisfies all the criteria for return of the property as laid out by the Ninth Circuit. First, Company A is entitled to lawful possession of the seized property. It is undisputed that $9,149,001.65 was illegally diverted from Company A to Defendant's account. Third, while the seizure was legal, the government's need for the property as evidence has ended. The Defendant has entered a plea of guilty and signed a forfeiture addendum. *See* ECF Doc. 24.

Even if this case were pre-indictment, and the *Richey* factors were therefore the guide, but for the first factor, Company A establishes the final three: (1) Company A has an individual interest in the property and wants the property returned; (2) Company A would be irreparably injured by denying return of the property; and (3) Company A does not have an adequate remedy at law for redress of his grievance. The funds were meant for Company A and were stolen by Defendant. Company A wants the funds returned. As

set forth in Exhibit A, Company A will be irreparably injured by denying return. And, the United States has informed victim Company A that it will not oppose this Rule 41(g) motion and has submitted a Preliminary Order of Forfeiture to the Court for authorization to continue to maintain possession of the funds and to hold in abeyance all notice of third-party proceeding pending an Order on this motion. In this case, ancillary proceedings are not an adequate remedy at law to redress the grievance because Company A needs the funds forthwith.

Here, Company A has provided notice to all potential claimants by serving this Motion on representatives of Oxford Gold, WC3 Wholesale, and Defendant. Wilshire Coin Owner Mr. Sorgenstein has disclaimed any interest in the $8,576,800.00 seized in his company's account. Oxford Gold has advised that it will seek to recover $430,778.84, which includes the amount seized from Oxford Gold Bank of America Account x3885, $133,308.18 and the amount seized from Chase Account ending x7667, which was associated with Defendant, $297,470.66. This Motion does not seek return of those funds at this time, via Rule 41. As the *Ramsden* Court noted, citing the Advisory Committee Notes to the 1989 Amendment of Rule 41(e) provide that "reasonableness under all of the circumstances must be the test when the person seeks to obtain the return of the property." *Ramsden,* 2 F.3d at 326. Company A's request is reasonable and should be granted.

In accordance with Rule 41(g), this Court can grant the motion and order the return of $8,578,206, consisting of $8,576,800.00 in funds seized from Torrey Pines/Western Alliance Bank acct x1396 held in the name of WC3 Wholesale, Inc. and $1,406.00 U.S. Currency seized pursuant to the arrest of Sean Tyler Mancuso forthwith to Company A. At the same time, the Court can enter a Preliminary Order of Forfeiture and retain jurisdiction over the $133,308.18 in funds from Oxford Gold Bank of America Account x3885, $297,470.66 in Chase Account ending x7667, and $4,029.43 in funds seized from Chase Bank acct x6251 held in the name of DOWN4EARTH. The fate of those funds can be determined in the normal course of ancillary forfeiture proceedings.

Without addressing the merits of Oxford Gold's claim, this Court can and should order the return of $8,578,206 to Company A. Only Company A has a legitimate claim to those funds. Company A will suffer irreparable harm if they are not released immediately because the company will either have to take extraordinary measures to maintain solvency, which may include laying off numerous employees, or risk becoming entirely insolvent. The defendant's crime could render a 325-person company defunct if the return of funds is not ordered. Company A does not have an adequate remedy at law, because the normal course of forfeiture proceedings can take at least 90 days and if made to wait that long, Company A may not survive.

IV. **CONCLUSION**

For the above reasons, in the interest of reasonableness and equity, this Court should grant Company A's motion and order the return of funds forthwith to Company A.

Dated:  February 16, 2023

                                      Respectfully Submitted,

                                      *Danielle Iredale*
                                      Danielle Iredale, Esq.
                                      Attorney for Company A