UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYLER MANCUSO,<br><br>Defendant. | CASE NO.:  23-CR-0022-TWR<br><br>ORDER ON ANCILLARY FORFEITURE PROCEEDINGS |

Pending before the Court is the Verified Petition of Oxford Gold Group Inc. ("Oxford Gold") alleging rightful ownership of $430,778.34 in funds seized by the Government during the investigation of defendant Mancuso.  [ECF No. 53.]  Also pending before the Court is the Verified Petition of Company A, which claims that the same $430,778.34 seized by the Government must be returned to Company A, the victim of defendant Mancuso's fraud.  The Government has filed Response to the Petitions, alleging that the entire $430,778.84 should be awarded to Company A.  [ECF No. 60.]  On May 11, 2023, the Court held a hearing on the Petitions.  In addition to argument by the parties, the Court heard testimony from Jonathan Adler, the managing partner of Oxford Gold.  On the day of the hearing Oxford Gold submitted a Response in Support of Petition.  [ECF No. 70.]

On May 18, 2023, the parties submitted supplemental briefing: Company A's Supplemental Briefing [ECF No. 76.]; Oxford Gold's Supplemental Briefing [ECF No. 77.]; and the Government's Supplemental Response and Opposition to Oxford Gold's Petition [ECF No. 78.] Upon full consideration of the record in this matter, the Court makes the following findings of fact and conclusions of law.

1. Between September and December 2022, defendant Tyler Mancuso ("Mancuso") was an employee of Company A, a technology business located in Carlsbad, California.

2. In October 2022, defendant Mancuso began manipulating the payment account for Company A to determine whether he could successfully steal funds from Company A.

3. On October 11, 2022, defendant Mancuso telephoned Oxford Gold and inquired about purchasing approximately $9 million in gold bullion. Over the next six weeks, Oxford Gold representatives communicated with defendant Mancuso about the proposed gold transaction, identified the third-party bullion seller (Wilshire Coin), and arranged to deliver the gold to defendant Mancuso. Ultimately, Mancuso and Oxford Gold executed a written agreement for the purchase of gold. The agreement was captioned "Oxford Gold Group Transaction Agreement," which provided that Mancuso would pay Oxford Gold's service fee of 3.22%, that is, the difference between Oxford Gold's cost for the gold and the retail price quoted to Mancuso for the gold (also known as "the spread").[1]

---

[1] At the hearing on May 11, 2023, Mr. Adler testified that Oxford Gold's expectation at the time that it entered into the Transaction Agreement with Mancuso was that the spread would equal to 3.22% of the contract price: "the difference between what we're selling the metals for and what we're buying the metals from the vender for." *See* ECF No. 72 at p. 13. Due to either a favorable fluctuation in the price of gold, or because Willshire Coin ultimately gave Oxford Gold a more favorable price, the spread rose from 3.22% to approximately 4.7%. The 4.7% figure is consistent with Oxford Gold's present claim to $430,778.84.

4. On November 2, 2022, defendant Mancuso used his Company A email login to fraudulently substitute his personal bank account as the payee account in the place of the bank account for Company A. By substituting his personal account for that of Company A defendant Mancuso was able to redirect the payment of $9,149,001.65, which he stole from Company A. The Court finds that a constructive trust in favor of Company A was formed at the moment that Mancuso stole the $9,149,001.65 from Company A.

5. On November 22, 2022, Mancuso paid Oxford Gold via a wire transfer from Chase Bank into Oxford Gold's Bank of America account. The payment amount was $9,007,578.84. *See* ECF No 53-2 at p. 9. On November 23, 2022, Oxford Gold sent a wire transfer to third-party bullion seller Willshire Coin in the amount of 8,576,800.00. *Id*. at p. 10. The spread for the transaction was $430,778.84.

6. The record establishes that Oxford Gold entered into a bona fide, arms-length transaction with Mancuso without any reason to believe that the funds Mancuso intended to, or ultimately used, to proceed with the purchase gold bullion from third-party seller Willshire Coin were derived from illegal activity. *See* ECF No. 77 at pp. 3-7. To properly earn their fee, Oxford Gold did exactly what the Transaction Agreement required them to do: successfully broker the sale of gold between purchaser Mancuso and third-party seller Willshire Coin. Oxford Gold is therefore a bona fide purchaser for value under Title 21, United States Code, Section 853(n)(6)(B).

7. As a bona fide purchaser for value, Oxford Gold has an interest in the disputed finds which is superior to that of Company A, the sole beneficiary of the above-noted constructive trust.

8. Although the law requires, as stated above, a finding that Oxford Gold has an interest superior to that that of Company A, equitable considerations are still relevant in determining the ultimate disposition of the contested funds.  The parties have fully briefed and are aware of the equitable considerations at issue in this matter.  Having given due consideration to all of those equitable considerations, the Court finds that Oxford Gold is entitled to $290,044.04, of the contested $430,778.34 seized by the Government.[2]

The Government is directed to prepare and submit an amended order of forfeiture consistent with this Order.

**IT IS SO ORDERED.**

DATED: 7/12/2023

Honorable Todd W. Robinson
United States District Judge

---

[2] The Court finds that $290,044.04 is what Oxford Gold reasonably expected to make at the time that it entered into the Transaction Agreement with Mancuso.